UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Dennis Collard,
    Claimant

    v.                                  Case No. 13-cv-446-SM
                                        Opinion No. 2015 DNH 001

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant,

Andrew Collard, moves to reverse or vacate the Acting

Commissioner's decision denying his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act, 42 U.S.C. §§ 423 and 1381-

1383c (the "Act").  The Acting Commissioner objects and moves for

an order affirming her decision.

For the reasons discussed below, claimant's motion is

denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In late 2010 and early 2011, claimant filed applications for

DIB and SSI, alleging that he had been unable to work since

September 30, 2010, due to a heart condition, emphysema, depression, and anxiety.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In June of 2012, claimant, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  Five weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

The Appeals Council denied claimant's request for review, making the ALJ's denial of claimant's applications the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 9).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

2

II.  <u>Stipulated Facts</u>.

    Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.


**Standard of Review**

I.   "<u>Substantial Evidence</u>" <u>and Deferential Review</u>.

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.  <u>Consolo v. Federal Maritime Comm'n.</u>, 383
U.S. 607, 620 (1966).  <u>See also</u> <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971).


II.  <u>The Parties' Respective Burdens</u>.

    An individual seeking DIB and/or SSI benefits is disabled
under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act
places a heavy initial burden on the claimant to establish the
existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482
U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human
Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
his impairment prevents him from performing his former type of
work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985);
<u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If
the claimant demonstrates an inability to perform his previous
work, the burden shifts to the Commissioner to show that there
are other jobs in the national economy that he can perform, in
light of his age, education, and prior work experience.  <u>See</u>

4

Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and
416.912(f).

    In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6
(1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

    With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: September 30, 2010. Admin. Rec. at 20. Next, he concluded that claimant suffers from several "severe" impairments, in that they "impose significant limitations on the claimant's ability to perform basic work activities." Id. They are: "depression; panic disorder without agoraphobia; gambling addition; alcohol abuse; marijuana abuse; atrial fibrillation; emphysema; obstructive pulmonary disease (COPD) with dyspnea; obstructive sleep apnea (OSA); morbid obesity and chronic back pain." Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 21-22. Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of

a range of sedentary work, though he has the ability to lift up to 50 pounds.[1]  He noted, however, that claimant:

> will need an hourly option to sit/stand; he will need two additional five minute breaks every eight hours; he can frequently push/pull; he can frequently perform foot control operations; he can never climb ropes, ladders, or scaffolds; he can never crawl or kneel; he can rarely crouch, stoop, [or] climb ramps/stairs; he can occasionally balance; he can frequently reach and overhead reach; he must avoid extreme cold, extreme heat; he must avoid all exposure to wetness, humidity, fumes, odors, dust, gases, poorly ventilated areas; [he] must avoid concentrated exposure to chemicals; he must avoid moving machinery and unprotected heights; he is limited to simple, routine, and repetitive tasks; he must work in a low stress environment with only occasional decision-making; he must have no interaction with the public; he is limited to only occasional interaction with co-workers.  Finally, work cannot be performed in wide-open areas.

Admin. Rec. at 23.  In light of those restrictions, the ALJ concluded that claimant was not capable of returning to any of his prior jobs.  Id. at 27.

---

[1]   "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  He presented a hypothetical scenario to the vocational expert, involving a worker with the above-listed limitations, and asked whether there are jobs in the national economy that such an individual can perform.  The vocational expert opined that there are such jobs, and gave several representative examples.  Based upon that testimony, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 29.  Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.[2]

_____

[2]     At the hearing, the ALJ explained that his hypothetical question involved an individual who, due to an inability to engage in frequent walking and a need for a sit/stand option, was capable of only "sedentary" work.  But, he made clear to the vocational expert that the person in his hypothetical question had the lifting ability of someone capable of "light" work.  See Admin. Rec. at 77-78 ("The 'sedentary' limitation is primarily concerned with the ability to walk when I give you that, but the person is capable of lifting more weight than the traditional, you know, less than 10 pounds.").  Given those limitations, the vocational expert opined that there were some "light" jobs that the person in the hypothetical question could perform.  See Id. at 78-79.

**Discussion**

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by improperly discounting claimant's subjective complaints of disabling pain and finding claimant's testimony to be less than entirely credible; and (2) by failing to consider all relevant medical evidence in determining claimant's residual functional capacity.

I.   <u>Claimant's Credibility</u>.

Claimant challenges the ALJ's determination that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [ALJ's] functional capacity assessment." Admin. Rec. at 24. Specifically, claimant says the ALJ failed to account for the disabling pain claimant says he experiences as a result of atrial fibrillation; failed to cite specific medical evidence to support his findings concerning claimant's ability to perform various daily activities; neglected to acknowledge the side-effects associated with claimant's failure to regularly use his CPAP machine; and drew improper inferences about claimant's credibility based upon his "destructive behavior" (in particular his alcohol and tobacco use).

When assessing a claimant's credibility, the ALJ "must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 *4 (July 2, 1996). Factors the ALJ should consider include the following:

> The medical signs and laboratory findings;
>
> Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and
>
> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Id. at *6.  But, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citation omitted).

10

In support of his conclusion that some of claimant's allegations were less than entirely credible, the ALJ relied upon a constellation of factors, including:

1.  Claimant's testimony that he did not use his CPAP device on a consistent basis, which the ALJ plausibly concluded was "an indication that [claimant] is able to get a good night's rest" and undermines claimant's "allegations of sleep difficulty." Admin. Rec. at 25. See also Id. at 357-58 and 390 (examining physicians reported that claimant denied or showed no signs of fatigue and denied apnea/snoring).

2.  Medical records that reveal instances of claimant's non-compliance with prescribed medical treatment and suggest that claimant's alleged symptoms due to his atrial fibrillation are not as severe as he alleges. In that regard, the ALJ noted that claimant's "possible unwillingness to follow treatment directives" might indicate "that his symptoms were not as severe as he purported." Id. at 24. See also Id. at 922 (record from Dr. Diaz noting that claimant "underwent successful direct current synchronized cardioversion on May 16, 2012. He converted to normal sinus rhythm and has since been doing well. He denies chest pain or shortness of breath. He has occasional skipping beats in his heart but no palpitations. . . . Otherwise, he is doing well.").

3.  At the hearing, claimant testified that "he had stopped smoking six months prior to the hearing and that he could only walk a distance of 100 feet." Id. at 24, 50-51. Yet, recent notations in his medical records reveal that "claimant was still smoking and [] could walk from 100 to 200 yards." Id. at 917.

4.     Several notations in claimant's medical
       records that undermine his claim of disabling
       anxiety and depression, including one from
       just a few weeks prior to the hearing, in
       which the examining physician reported that
       "claimant was well nourished, alert, and
       oriented with no unusual symptoms of anxiety
       or evidence of depression." Id. at 25.  See
       also Id. at 293 and 627.

5.     Despite claimant's hearing testimony that he
       has difficulty caring for himself, id. at 45,
       64, in his report of daily activities he
       stated that he has no difficulty with
       "personal care" (which includes dressing,
       bathing, shaving, eating, and using the
       toilet).  Id. at 201-03.  His mother also
       reported that he had no difficulty with any
       items of personal care.  Id. at 209-10.

Additionally, in a Psychiatric Review Technique, completed in

July of 2011, Patricia Salt, Ph.D., concluded that claimant's

impairments limit him only "mildly" in the realms of activities

of daily living, social functioning, and maintaining

concentration, persistence, or pace.  Admin. Rec. at 445.


     While claimant has certainly identified evidence in the

record supportive of his claims, it is the ALJ's role to resolve

such conflicts and discrepancies in the record.  And, claimant's

history of periodic non-compliance with prescribed medical

treatments (despite their apparent success in treating his atrial

fibrillation), his continued smoking (despite complaints

associated with his COPD), and his hearing testimony that was

12

inconsistent with reports he made to treating medical
professionals all serve to undermine his credibility.


Consequently, viewing the record in its totality, it is
plain that the ALJ's credibility findings are supported by
substantial evidence.  For that reason, the court lacks authority
to disturb them.  See, e.g., Juraska v. Astrue, 2011 WL 5403225,
10, 2011 DNH 184 (D.N.H. Nov. 8, 2011) ("Because the ALJ
discussed the relevant factors and made a determination that is
supported by substantial evidence, I have no grounds to disturb
the finding.  Although [claimant] cites ample evidence that tends
to conflict with the ALJ's credibility determination, it is the
responsibility of the Commissioner, not a reviewing court, to
determine issues of credibility and resolve conflicts in the
evidence.") (citation omitted).


II.  Claimant's Residual Functional Capacity.

Next, claimant asserts the ALJ failed to consider all
relevant medical evidence when determining his RFC.
Specifically, he challenges the ALJ's decision to discount the
opinions expressed by claimant's treating physician, Restituto
Malonso, M.D.  On June 28, 2012 - just one month prior to
claimant's administrative hearing - Dr. Malonso completed a
Physical Impairment Medical Source Statement.  See Admin. Rec. at

938-42.  Viewed in isolation, that report provides fairly
compelling support for claimant's assertions of disability: it is
from a treating source, see generally 20 C.F.R. § 404.1527(c)(2),
and in it Dr. Malonso opines that claimant's impairments
"constantly" interfere with his attention and concentration;
claimant can "occasionally" lift up to 20 pounds, but he cannot
lift anything on a "frequent" basis; claimant is incapable of
working at any job that requires him to stand for any period of
time; claimant can sit or stand/walk for "less than 2 hours" in
total; and, "while engaging in occasional standing/walking,"
claimant would need to use a cane or other assistive device.

As the ALJ noted, the problem with Dr. Malonso's report is
that it is inconsistent with the balance of claimant's medical
records and appears to substantially overstate the disabling
nature of his impairments.  For example, Dr. Malonso's opinion
that claimant could not stand for more than "zero minutes" before
needing to sit down or walk around finds no support in the
record.  Nor is there evidence to support his statement that
claimant requires the assistance of a cane.  See, e.g., Admin.
Rec. at 206 (in his own function report, claimant denied needing
to use a cane, walker, crutches or other assistive device); 214
(claimant's mother reported that he did not need any assistive
device); 709 (same, as reported by Portsmouth Regional Hospital).

14

Moreover, on the same day he completed his Medical Source
Statement – June 28, 2012 – Dr. Malonso examined claimant and
reported that while he "remains limited by the COPD" (at least in
part because he continues to smoke), claimant "denied angina,
claudication, lightheadedness and myalgias." Id. at 917.  He
also noted that, with regard to claimant's atrial fibrillation,
his heart rate was "controlled, appears to be in NSR [normal
sinus rhythm]," that claimant had no extra sounds or murmurs, and
that his heart rate was normal.  Id. at 918.  In short, those
records suggest that claimant was managing his chronic medical
problems reasonably well (with the exception of his continued
smoking and obesity/dietary issues); nothing suggests the type or
level of impairment that is described in Dr. Malonso's Medical
Source Statement.

    Also, just two weeks before Dr. Malonso completed his
Medical Source Statement, claimant was examined by Lazaro Diaz,
M.D. at the Cardiovascular Group - Wentworth Health Partners.
Dr. Diaz noted that claimant had recently undergone successful
cardioversion (to address his atrial fibrillation), denied chest
pain or shortness of breath, had occasional skipping beats but no
palpitations, and was otherwise "doing well." Id. at 922.  And,
shortly before that, claimant visited Sunita Ray, M.D. for an
ingrown toenail.  Dr. Ray reported that "patient appears well

15

nourished, well developed and hydrated," and shows "no unusual anxiety or evidence of depression."   Id. at 921.

None of those medical reports from around the time of Dr. Malonso's Medical Source Statement contain any suggestion that claimant's impairments affect him in the profound ways suggested by Dr. Malonso.  And, as the ALJ noted, Dr. Malonso did not cite to any objective clinical or diagnostic findings to support his assessment.  See generally 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical findings and laboratory findings, the more weight we will give to that opinion.").  See also Rodriquez v. Secretary of Health and Human Services, 1995 WL 45781, *4 (1st Cir. 1995) ("The ALJ need not accept an opinion of a physician – even a treating physician – if it is conclusory and brief and unsupported by clinical findings.") (citations omitted).

Again, while there is evidence in the record tending to support claimant's assertions of disabling impairments, there is also substantial countervailing evidence to support the ALJ's conclusion that claimant is not totally precluded from all gainful activity.  Consequently, there is no basis for the court to vacate that conclusion.

Finally, claimant points to a conflict in the evidence he claims the ALJ never properly resolved.  Specifically, he notes that there is conflicting evidence about whether he retains the ability to lift up to 50 pounds (as he suggested at the hearing, see Admin. Rec. at 46-47).  But, the court need not resolve that issue.  Even if the ALJ erred (it is not clear that he did), and even if claimant is capable of lifting only 20 pounds (as found by James Trice, M.D., Admin. Rec. at 417; see also id. at 939), such an error would have been harmless.  Two of the representative jobs the ALJ concluded claimant could perform are "light" positions (collator operator and electronic sub-assembler).  The third - tube operator - is a "sedentary" position.  See Id. at 29.  All three jobs are consistent with an ability to occasionally lift 20 pounds and frequently lift 10 pounds; none would require claimant to have the ability to lift 50 pounds.  See generally supra, note 2 (discussing the lifting requirements specified in the ALJ's hypothetical question to the vocational expert).

## Conclusion

This court's review of the ALJ's decision is both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act.

17

Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence – as they are in this case – the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of his decision (August 3, 2012). Both the ALJ's

18

credibility determination and his decision to discount the opinions of Dr. Malonso are well-reasoned and well-supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Acting Commissioner (document no. 9) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 11) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 7, 2015

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, Esq.

19